EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HUNT INVESTMENTS, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 3:14-CV-716 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant MGT Construction Management, Inc.'s Motion to Dismiss ("MGT Motion") (ECF No. 30), Defendant Walter Parks, Architect, PLLC Motion to Dismiss Plaintiffs' First Amended Complaint ("Parks Motion") (ECF No. 32), and Defendants Hunt Investments, LLC, Cedar Street Genesis, LLC and Genesis Homes Manager, LLC's Motion to Dismiss Amended Complaint ("Hunt & Genesis Motion") (ECF No. 34). Plaintiffs filed a Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss on December 23, 2014 ("Opp'n Mem.") (ECF No. 36), and the Defendants each filed their respective replies on December 29, 2014 (ECF Nos. 39, 40, 41). A hearing was held on Tuesday, April 7, 2015. For the reasons set forth below, each of the above-listed Motions is hereby GRANTED.

### I. BACKGROUND

#### a. *Factual Background*

This is a civil rights action brought by Plaintiffs National Fair Housing Alliance ("NFHA")[1] and Housing Opportunities Made Equal of Virginia ("HOME")[2] against the developers, builders, designers, and owners of the multifamily apartment complex "Shockoe

---

[1] NFHA is a national, nonprofit, public service organization whose mission includes advocating for the rights of people with disabilities to accessible housing. (Am. Compl. ¶ 10.)

[2] HOME is a nonprofit corporation who works to ensure equal access to housing for all persons through counseling, education and advocacy. (Am. Compl. ¶ 11.)

Valley View Apartments" (also known as "Cedar Street Apartments") located in Richmond, Virginia, arising from violations of the accessibility requirements of the Fair Housing Act, Title VII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601-3619.[3] Specifically, the Defendants in this case are: Hunt Investments, L.L.C. ("Hunt"), Cedar Street Genesis, LLC ("Cedar Street"), Genesis Homes Manager, LLC ("Genesis Homes")–all of whom are allegedly responsible for the design and/or construction of the project; Walter Parks, Architect, PLLC ("Parks")–who is the architect responsible for the design of the project; and MGT Construction Management, Inc. ("MGT")– who is the general contractor on the project.

The apartment complex project has been divided into phases. Construction is ongoing in Phase 1 ("Tested Property" or "Shockoe"), located at 1900, 1902, and 1904 Cedar Street, Richmond, Virginia 23223. Plaintiffs allege that construction will begin soon on Phase 2, located at 1901, 1903, and 1905 Cedar Street, Richmond, Virginia 23223.

In June 2014, Plaintiffs allege that they became aware that the multifamily housing complex designed and/or constructed by Defendants did not include the required elements of accessible and adaptable design. Plaintiffs therefore sent "testers"[4] to Shockoe in June 2014. The testers were shown four possible rental units at Shockoe, two of which were available to rent immediately. The testers identified alleged FHAA violations in those units and common areas. The testers observed that one portion of Phase 1 was completed and being marketed and rented, while the other portion of Phase 1 was still under construction.

---

[3] The FHAA mandates that every multifamily apartment building containing four or more units and built for first occupancy after March 13, 1991 be subject to certain design and construction requirements. All ground floor units must comply with the following requirements, as must all units in a building served by an elevator: public and common use areas that are readily accessible to, and usable by, people with disabilities; doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs; an accessible route into and through the dwelling; light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; reinforcements in bathroom walls that allow for the later installation of grab bars; and usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space. *See* 42 U.S.C. § 3604(f)(3)(C).

[4] "Testers are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence" of discriminatory housing practices. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

In September 2014, Plaintiffs sent another tester to Shockoe, who was shown two units in Phase 1, both of which were available for rent in the near future. The tester again allegedly identified multiple FHAA violations in those units and common areas. Defendants' agent also attempted to show the tester the model unit, but the tester, who uses a motorized wheelchair, could not enter the model unit because there were steps leading up to the only entrance. The tester observed a substantial portion of Phase 1 had been constructed and several units in Phase 1 were already occupied.

Further, the blueprints for Shockoe that Defendants submitted to the building department for approval demonstrate that the units that are still under construction at Phase 1 will contain many of the same alleged FHAA design and construction violations identified in the units currently being rented. Those blueprints were approved by the building department and temporary certificates of occupancy have been issued.

### b. *Procedural Background*

Plaintiffs filed their Complaint in this Court on October 21, 2014, requesting declaratory and injunctive relief as well as damages and attorneys' fees. Defendants subsequently filed Motions to Dismiss. (*See* ECF No. 6, 9, 12). Those Motions to Dismiss were denied as moot after Plaintiffs filed their Amended Complaint. (*See* ECF No. 43.) In the Amended Complaint, Plaintiffs allege violations of 42 U.S.C. § 3604(f)(3)(C) at the Tested Property.[5] Plaintiffs further allege that their missions to eradicate discrimination in housing and in carrying out the programs and services they provide have been frustrated, and they have been forced to divert significant and scarce resources to identify, investigate and counteract Defendants' discriminatory practices. Defendants filed their present Motions to Dismiss the Amended Complaint on December 10, 2014.

//

---

[5] For a complete list of the Defendants' alleged violations of 42 U.S.C. § 3604(f)(3)(C), see Am. Compl. ¶¶ 24-28.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action. The Court must dismiss the action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Under Rule 12(b)(1), the plaintiff bears the burden of proving that jurisdiction exists in federal court. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The district court must then weigh the evidence to determine whether jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In its determination, a court should grant a Rule 12(b)(1) motion to dismiss if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

## III. DISCUSSION

### a. *Parties' Arguments*

Each of the Defendants' Motions raises the issue of ripeness.[6] Specifically, the Defendants assert that because construction of the project is ongoing, Plaintiffs' claims are premature. Defendants further argue that "[t]he imposition of FHA liability for a partially-complete construction project would be patently unfair, as plans routinely change during the course of a project." (Parks Mem. in Supp. of Mot. at 4–5); *(see also* MGT Mem. in Supp. of Mot. at 4) ("With construction still underway, any claim by Plaintiffs that the project, in its final form, will not comply with the FHA necessarily depends upon future uncertainties and is not ripe for adjudication.").

---

[6] The Hunt & Genesis Motion also asserts that the Amended Complaint fails to allege factual allegations that any violations of the FHAA exists and therefore should be dismissed pursuant to Rule 12(b)(6). Specifically, the Motion alleges that the Amended Complaint "fail[s] to provide any allegations specific to the units and/or areas for which temporary certificates of occupancy have allegedly been granted and which are being marketed to renters and which are currently available." (Hunt & Genesis Br. in Supp. of Mot. at 6.) Because the Court disposes of the case on Rule 12(b)(1), Hunt & Genesis's Rule 12(b)(6) argument will not be addressed.

4

Plaintiffs argue to the contrary that an FHAA violation does not only occur when "the project at issue is complete." Rather, they assert that a violation occurs when a *portion of* a building that is intended for residency is designed and built without the features set forth in 42 U.S.C. § 3604(f)(3)(C)(i)–(iii). Plaintiffs further allege that the FHAA establishes that entities can bring suit when discriminatory housing practices are about to occur. (Opp'n Mem. at 8) (citing 42 U.S.C. § 3602(i)(2)). Plaintiffs claim that entities like themselves are permitted to bring suit at an early juncture, at least in part, to try to prevent injuries to protected persons. Finally, Plaintiffs contend that they will suffer hardship if the court withholds consideration of Plaintiffs' claims. (*See* Opp'n Mem. at 11–12.) Specifically, Plaintiffs allege that they have already spent their "limited resources" on testers, plan reviews, site visits and investigating and testing the property, as well as identifying the violations and bringing the present action. Further, dismissal of this suit will increase noncompliance with the accessibility requirements of the FHAA.

In reply, Defendants suggest that the Court look to the statute of limitations for FHAA design and construction cases in determining the ripeness issue presented in the present Motions. Citing *Garcia v. Brockway*, 526 F.3d 456, 461 (9th Cir. 2008), the Defendants conclude that a discriminatory housing practice as defined under the Act occurs at the conclusion of the construction, or when the final certificate of occupancy is issued. Here, Defendants contend and Plaintiffs do not dispute that construction of Phase 1 is ongoing and construction of Phase 2 has not even begun, and as such, there can be no finding of discrimination.

### b. Analysis

"The 'ripeness' requirement originates in the 'case or controversy' constraint of Article III, and presents a 'threshold question [] of justiciability." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (quoting *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 195 (4th Cir. 2013)).

The doctrine is intended to prevent courts "from becoming entangled in 'abstract disagreements'" by requiring "courts to avoid taking premature judicial action." *Id.* at 270. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). In determining ripeness, the Court must consider both "the fitness of the issues before the court, as well as the hardship that the parties will experience if the court withholds consideration of the dispute." *Scoggins*, 718 F.3d at 270 (citations omitted).

The FHAA, in relevant part, makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap. 42 U.S.C. § 3604(f)(1). Dwelling is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families . . . ." 42 U.S.C. § 3602(b). Discrimination includes

> . . . a failure to design and construct those dwellings in such a manner that–
> (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> (iii) all premises within such dwellings contain the following features of adaptive design:
> (I) an accessible route into and through the dwelling;
> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
> (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C)(i)–(iii). This section of the FHAA is often referred to as "design and construct" claims.

As an initial matter, the Court first considers the plain language of the FHAA. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997); *Hamilton v. 1st Source Bank,* 928 F.2d 86, 87 (4th Cir. 1990). Unless it specifies to the contrary, Congress intends the plain meaning of the statutory terms to govern. *See United States v. Hunter,* 459 F.2d 205, 210 (4th Cir. 1972) (citing

*Caminetti v. United States,* 242 U.S. 470, 485–486 (1917)). Plaintiffs emphasize the phrase "any building, structure, *or portion thereof*" in arguing that "the FHAA establishes that it is a violation to design and build a *portion of* a building that is intended for residency without the features set forth in § 3604(f)(3)(C)(i)–(iii)." (Opp'n Mem. at 6.) While this language supports the general assertion that a plaintiff can bring an action for an FHAA violation if a portion of a building contains barriers to accessibility, this language does not control the ripeness issue presented here. In other words, the specific issue presented in the instant Motions is whether a plaintiff can sustain an action when only a portion of a building is constructed versus sustaining an action based on a portion of the building after construction is complete? Defendants do not dispute the appropriateness of the latter scenario. (MGT Reply Mem. at 1.) But they do take issue with the former.

As evidenced by the parties' briefs, scant case law exists addressing the specific ripeness issue presented in this case. The Eighth Circuit's holding in *Paraquad, Inc. v. St. Louis Housing Authority*, 259 F.3d 956 (8th Cir. 2001) appears to be most relevant. In that case, the St. Louis Housing Authority ("SLHA") received a grant from the United States Department of Housing and Urban Development ("HUD") for revitalization of a public housing complex. 259 F.3d at 958. The revitalization plan called for the demolition of more than 1200 public housing dwelling units and the construction of more than 650 new mixed income apartments and homes. *Id.* Plaintiffs brought suit alleging that the SLHA refused to provide accessible replacement housing and supportive services to disabled families. *Id.* The district court granted summary judgment to the SLHA, holding, *inter alia*, the plaintiffs' challenge was not ripe. *Id.* The district court noted that plaintiffs needed to present "facts that more specifically show the likelihood of injury." *Id.* at 959. "The district court stated the plaintiffs had not come forward with evidence showing any disabled individuals have been relocated to an inaccessible housing unit, denied relocation at all, or denied public housing as a result of the [revitalization] project." *Id.* Further, the district court held that "plaintiffs presented no evidence that the actual, finished units will not be accessible

and in compliance with applicable federal law." *Id.* In affirming the district court's decision, the Eighth Circuit agreed that injury to the disabled was not "certainly impending." *Id.* The Court noted that plaintiffs cannot identify any individuals who have been denied accessible housing under the plan, and plans for the design and construction of the new buildings were not yet complete. *Id.* "[D]emolition has not yet started, drawings are still in the preliminary phase, and no new construction has begun." *Id.*

Plaintiffs distinguish *Paraquad* from the instant case by arguing that here Defendants are much further along in the process of constructing dwellings. As alleged in the Amended Complaint, plans have received final approval by the building department and temporary certificates of occupancy have been issued (Am. Compl. ¶ 22); units were being marketed and rented (*id.* at ¶ 20); and several units were already occupied (*id.* at ¶ 21). Because Plaintiffs' argument is persuasive but not determinative, the Court will instead approach the issue from an alternative angle: when does the statute of limitations begin to run on FHAA claims? *See Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002) (citation omitted) ("[A] cause of action accrues for purposes of the statute of limitations 'when it is sufficiently ripe that one can maintain suit on it.'").

The FHAA's statute of limitations for private citizen suits, including design and construction claims, provides:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). The statute thus begs the question, when does "the occurrence or the termination of an alleged discriminatory housing practice" transpire? The Fourth Circuit has not ruled on the question of statute of limitations as applied to design and construction claims.

Rather, the Defendants rely on Ninth Circuit opinion in *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) to support their argument.

In *Garcia*, plaintiffs appealed the district court's determination that their FHA claim was time-barred by the two year statute of limitations. 526 F.3d at 459. The "discriminatory housing practice" at issue was the failure to design and construct a multifamily dwelling according to FHA standards. *Id.* at 461. The Ninth Circuit found that "[t]he statute of limitations is . . . triggered at the conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued." *Id.*; *see also Moseke v. Miller and Smith, Inc.*, 202 F. Supp. 2d 492, 510 (E.D. Va. 2002) (finding that the "completion of the construction triggered the FHA statute of limitations for a design and construct claim"). Further, the Court held that the "failure to design and construct" is "a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase." *Id.* at 462; *see also Moseke*, 202 F. Supp. 2d at 503 ("[T]he plain meaning of the 'the occurrence . . . of a discriminatory housing practice' is a discrete event or incident that encompasses a discriminatory custom."); *Kuchmas v. Towson Univ.*, No. RDB 06-3281, 2007 WL 2694186, at *5 n.6 (D. Md. Sept. 10, 2007) (citing cases) (noting that other courts have held that the statute of limitations begins running when a noncompliant building is fully constructed). In other words, "failing to design and construct is a single instance of unlawful conduct." 526 F.3d at 463.

Admittedly, *Garcia* did not address the specific issue presented in this case. *Garcia* was instead concerned with whether plaintiffs could claim a continuing violation of the FHA or merely a "continuing effect of a past violation," *id.* at 462, for purposes of the statute of limitations. But, importantly, the majority rejected the dissent's conclusion that the statute of limitations begins to run "when a disabled person experiences discrimination–either in attempting to buy or rent a noncompliant housing unit, in 'testing' such a unit or upon moving in as a tenant." *Id.* at 467.

Here, like *Garcia*, the discriminatory housing practice alleged is a failure to design and construct the Tested Property in such a manner that complies with FHAA standards. In applying *Garcia*'s logic, this "failure to design and construct" is a discrete instance of discrimination that will only occur at the completion of the construction. Because Phase 1 was and still is under construction, (*see* Am. Compl. ¶¶ 2, 21), and only *temporary* certificates of occupancy have been issued, (*id.* at ¶ 22), no discrimination has yet occurred. Moreover, Defendants submit that they "are willing to address and correct any accessibility concerns as they continue construction so that the completed project complies with the FHAA." (Hunt & Genesis Mot. at 3.) Thus, as the Supreme Court heeded, this claim is not fit for adjudication as it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300.

In considering the latter half of the ripeness inquiry, that is hardship to the parties, the Court finds Plaintiffs' argument unavailing. "The hardship prong is measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). Additionally, the Court may consider the cost to the parties of delaying judicial review. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citing *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119, 1124 (4th Cir. 1977)). In this case, although there may be some delay to Plaintiffs, their cause of action is certainly not foreclosed. Moreover, the damages which Plaintiffs allege, (Opp'n Mem. at 11), remain recoverable in a later cause of action.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the MGT Motion, Parks Motion, and Hunt & Genesis Motion are hereby GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this  10th  day of April 2015.