EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, INC., *et al.*,<br><br>                                  Plaintiffs,<br><br>v.<br><br>HUNT INVESTMENTS, LLC, *et al.*,<br><br>                                Defendants. | Civil Action No. 3:14-CV-716 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Reconsider or, in the Alternative, Motion for Leave to Amend Complaint ("Motion") (ECF No. 63), filed by Plaintiffs, National Fair Housing Alliance, Inc. ("NFHA") and Housing Opportunities Made Equal of Virginia ("HOME"). Defendants each filed their respective responses in opposition on May 19, 2015 (ECF Nos. 68, 69, 70), and Plaintiffs subsequently filed a reply on May 26, 2015 ("Reply Mem.") (ECF No. 71)[1]. The United States also filed a Statement of Interest in this matter on May 28, 2015 ("Gov't's Resp.") (ECF No. 72). For the reasons set forth below, the Court GRANTS the Motion.

I. **BACKGROUND**

    a. *Factual Background*[2]

This is a civil rights action brought by Plaintiffs NFHA[3] and HOME[4] against the developers, builders, designers, and owners of the multifamily apartment complex "Shockoe Valley View Apartments" (also known as "Cedar Street Apartments") located in Richmond, Virginia, arising from violations of the accessibility requirements of the Fair Housing Act, Title

---

[1] Plaintiffs' Reply Memorandum was timely filed because Monday, May 25, 2015 was a federal holiday. *See* Fed. R. Civ. P. 6(a)(1)(C).
[2] The factual background is taken from Plaintiffs' Amended Complaint (ECF No. 25).
[3] NFHA is a national, nonprofit, public service organization whose mission includes advocating for the rights of people with disabilities to accessible housing. (Am. Compl. ¶ 10.)
[4] HOME is a nonprofit corporation who works to ensure equal access to housing for all persons through counseling, education and advocacy. (Am. Compl. ¶ 11.)

1

VII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601-3619.[5] Specifically, the Defendants in this case are: Hunt Investments, L.L.C. ("Hunt"), Cedar Street Genesis, LLC ("Cedar Street"), Genesis Homes Manager, LLC ("Genesis Homes")—all of whom are allegedly responsible for the design and/or construction of the project; Walter Parks, Architect, PLLC ("Parks")—who is the architect responsible for the design of the project; and MGT Construction Management, Inc. ("MGT")—who is the general contractor on the project.

The apartment complex project has been divided into phases. Construction is ongoing in Phase 1 ("Tested Property" or "Shockoe"), located at 1900, 1902, and 1904 Cedar Street, Richmond, Virginia 23223. Plaintiffs allege that construction will begin soon on Phase 2, located at 1901, 1903, and 1905 Cedar Street, Richmond, Virginia 23223.

In June 2014, Plaintiffs allege that they became aware that the multifamily housing complex designed and/or constructed by Defendants did not include the required elements of accessible and adaptable design. Plaintiffs therefore sent "testers"[6] to Shockoe in June 2014. The testers were shown four possible rental units at Shockoe, two of which were available to rent immediately. The testers identified alleged FHAA violations in those units and common areas. The testers observed that one portion of Phase 1 was completed and being marketed and rented, while the other portion of Phase 1 was still under construction.

In September 2014, Plaintiffs sent another tester to Shockoe, who was shown two units in Phase 1, both of which were available for rent in the near future. The tester again allegedly

---

[5] The FHAA mandates that every multifamily apartment building containing four or more units and built for first occupancy after March 13, 1991 be subject to certain design and construction requirements. All ground floor units must comply with the following requirements, as must all units in a building served by an elevator: public and common use areas that are readily accessible to, and usable by, people with disabilities; doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs; an accessible route into and through the dwelling; light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; reinforcements in bathroom walls that allow for the later installation of grab bars; and usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space. *See* 42 U.S.C. § 3604(f)(3)(C).

[6] "Testers are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence" of discriminatory housing practices. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

identified multiple FHAA violations in those units and common areas. Defendants' agent also attempted to show the tester the model unit, but the tester, who uses a motorized wheelchair, could not enter the model unit because there were steps leading up to the only entrance. The tester observed a substantial portion of Phase 1 had been constructed and several units in Phase 1 were already occupied.

Further, the blueprints for Shockoe that Defendants submitted to the building department for approval demonstrate that the units that are still under construction at Phase 1 will contain many of the same alleged FHAA design and construction violations identified in the units currently being rented. Those blueprints were approved by the building department and temporary certificates of occupancy have been issued.

### b. *Procedural Background*

Plaintiffs filed their Complaint in this Court on October 21, 2014, requesting declaratory and injunctive relief as well as damages and attorneys' fees. Defendants subsequently filed Motions to Dismiss. (*See* ECF No. 6, 9, 12). Those Motions to Dismiss were denied as moot after Plaintiffs filed their Amended Complaint. (*See* ECF No. 43.) In the Amended Complaint, Plaintiffs allege violations of 42 U.S.C. § 3604(f)(3)(C) at the Tested Property.[7] Plaintiffs further allege that their missions to eradicate discrimination in housing and in carrying out the programs and services they provide have been frustrated, and they have been forced to divert significant and scarce resources to identify, investigate and counteract Defendants' discriminatory practices. Defendants filed Motions to Dismiss the Amended Complaint on December 10, 2014. (ECF Nos. 30, 32, 34.) After oral argument on April 7, 2015, the Court granted each of the Motions to Dismiss. (*See* ECF Nos. 60, 61.) Plaintiffs then filed the present Motion on May 8, 2015.[8]

---

[7] For a complete list of the Defendants' alleged violations of 42 U.S.C. § 3604(f)(3)(C), see Am. Compl. ¶¶ 24-28.

[8] Plaintiffs also filed a Notice of Appeal on May 8, 2015. (ECF No. 65.) However, pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), the Court will issue judgment on the present Motion. *See* Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—

## II. LEGAL STANDARD

### a. *Motion to Reconsider–Rule 59(e)*

A motion to reconsider takes the form of a motion to alter or amend a judgment under the Federal Rules of Civil Procedure. *See EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997). Rule 59(e) of the Federal Rules of Civil Procedure governs motions to alter or amend a judgment. The Rule simply provides, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

It is well-settled, that there are only three grounds for granting a motion to alter or amend a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Rule 59(e) is intended to allow "a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995)). A Rule 59(e) motion is "an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.,* 148 F.3d at 403 (citation and internal quotation marks omitted).

### b. *Motion for Leave to Amend–Rule 15(a)(2)*

Rule 15(a) states that a party may amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A)–(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R .Civ. P. 15(a)(2). Typically, a court should allow a party to amend unless an amendment would prove futile or the party seeking the amendment proceeds in bad faith.

---

but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). On May 19, 2015, the Court received notice from the Fourth Circuit that it will await the Court's disposition of the instant motion.

4

*Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 447 (4th Cir. 2004); *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 216 (E.D. Va. 2008).

### III. DISCUSSION

Plaintiffs assert two arguments in support of their motion for reconsideration: (1) Plaintiffs had no opportunity to brief the significance of *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008); and (2) the Court's ruling was clearly erroneous and caused manifest injustice. (Mem. in Supp. of Mot. at 5.) As to Plaintiffs' first contention, Plaintiffs request reconsideration "both to ensure fairness to Plaintiffs and to ensure that [the Court] has full argument before it with respect to the point on which it granted Defendants' motion." (*Id.*) With regards to Plaintiffs' second argument, Plaintiffs contend that the Court's ruling was inconsistent with the FHAA's texts and violates public policy considerations. (*See id.*)

Plaintiffs' first argument relies on the contention that they never had an opportunity to rebut Defendants' *Garcia* argument *in writing* to the Court. (*Id.* at 7.) Plaintiffs do concede, however, that they addressed *Garcia* at the hearing held on April 7, 2015. (*Id.* at 7 n.2.) In fact, Plaintiffs attempted to distinguish *Garcia* "on a number of levels." (Hrg. Tr. 17:23, ECF No. 62.) Specifically, Plaintiffs argued that besides being an out-of-circuit case, *Garcia* was only focused on the last certificate of occupancy, and never addressed "what happens when the first Certificate of Occupancy is issued." (*Id.* at 17:23–24; 18:4–5.)

While Plaintiffs are correct that "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered," this rule is merely discretionary. *Clawson v. FedEx Ground Package Sys., Inc.*, 415 F. Supp. 2d 731, 734 (D. Md. 2006) (citations omitted). The rule is intended to prevent prejudice against an opponent who lacks an opportunity to respond. *Id.* at 735. Thus, "courts are not precluded from considering such issues in appropriate circumstances." *Id.* at 734. Plaintiffs had a sufficient opportunity to respond, and thus suffered no prejudice. Therefore, the Court finds Plaintiffs' first argument unavailing.

5

As to Plaintiffs' second argument for reconsideration, they first contend that the Court's decision was clearly erroneous in relying on *Garcia*. Plaintiffs argue that "[i]mportantly, the Ninth Circuit determined only the *latest* moment when claims against developers and builders could have accrued . . . . It did *not* find that the date on which the practice terminated was the *first* day on which the practice could be challenged." (Mem. in Supp. of Mot. at 8; *see also* Govt's Resp. at 17–18.)  Plaintiffs contend that because temporary certificates of occupancy have been issued and Defendants are renting units to the public based on those certificates, Defendants are engaging in a series of discriminatory acts that are sufficient to state a claim under the FHAA.

In its Memorandum Opinion, this Court candidly admitted that "*Garcia* [does] not address the specific issue presented in this case." (Mem. Op., Apr. 10, 2015, ECF No. 60 at 9.) This Court recognized that *Garcia* addressed the statute of limitations issue and continuing violation theory under the FHA. (*Id.*) Upon review of the holding in *Garcia*, however, the Court finds that *Garcia* is not controlling and thus should not have been applied. *Garcia* found that "[t]he statute of limitations is . . . triggered at the conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued." *Garcia*, 526 F.3d at 461. The Court further held that the "failure to design and construct" is "a discrete instance of discrimination that *terminates* at the conclusion of the design-and-construction phase." *Id.* at 462 (emphasis added). Thus, as Plaintiffs contend, *Garcia* does not discuss when the discriminatory act in a design-and-construct claim can *first* be challenged, but rather only discusses when such claims terminate for purposes of the statute of limitations. Because no binding authority exists as to the *first* instance a design-and-construct claim can be brought, the Court will instead undertake a review of the plain language of the statute as well as the Housing and Urban Development ("HUD") regulations, as highlighted by the United States, in order to determine the ripeness issue presented here.

A "discriminatory housing practice" under the FHA "means an act that is unlawful under section 3604 . . . of this title." 42 U.S.C. § 3602(f). And as noted in the Court's original

6

Memorandum Opinion, section 3604 makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap. 42 U.S.C. § 3604(f)(1). Specifically, in connection with "covered multifamily dwellings," discrimination includes

> . . . a failure to design and construct those dwellings in such a manner that–
> (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> (iii) all premises within such dwellings contain the following features of adaptive design:
> (I) an accessible route into and through the dwelling;
> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
> (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C)(i)–(iii).

A covered "multifamily dwelling" means "buildings consisting of 4 or more units if such buildings have one or more elevators; and ground floor units in other buildings consisting of 4 or more units." 42 U.S.C. § 3604(f)(7)(A)–(B); 24 C.F.R. § 100.201 (emphasis added) (defining "covered multifamily dwellings as "buildings consisting of 4 or more *dwelling units* if such buildings have one or more elevators; and ground floor *dwelling units* in other buildings consisting of 4 or more dwelling units").[9] Moreover, dwelling is defined as "any building, structure, or *portion thereof* which is occupied as, or designed or intended for occupancy as, a residence by one or more families . . . ." 42 U.S.C. § 3602(b). The HUD regulations also specifically define a "dwelling unit" as a "single unit of residence for a family or one or more persons . . . *includ[ing] an apartment unit* within an apartment building." 24 C.F.R. § 100.201 (emphasis added).

---

[9] The Shockoe Valley Apartments are "multifamily dwellings" as that term is defined in the FHA. (Am. Compl. ¶ 37.)

Additionally, a plaintiff can bring suit when a discriminatory housing practice is about to occur. *See* 42 U.S.C. § 3613(c)(1); 42 U.S.C. § 3602(i)(2) (defining "aggrieved person" in part as any person who "believes [he or she] will be injured by a discriminatory housing practice that is *about to occur*"). The Federal Register commentary sheds some light on 42 U.S.C. § 3602(i)(2). *See* Fair Housing Amendments Act of 1988, 54 Fed. Reg. 3232, 3238 (Jan. 23, 1989) (codified at 24 C.F.R. § 100.20). Specifically, the commentary states that the phrase "'about to occur' applies to a number of situations in which it is *clear* to a person that, if he or she takes an action, he or she will be subjected to a discriminatory act which will result in an injury. In such cases, the Fair Housing Act does not require these persons to expose themselves to the injury involved with the actual act of discrimination before filing a comlaint [sic]." *Id.* (emphasis added).

Upon reconsideration of the matter, Plaintiffs' claims are, at the very least, "about to occur," 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 3602(i)(2), and thus are fit for judicial resolution. In the Amended Complaint, Plaintiffs allege that "[t]he blueprints for Shockoe that Defendants submitted to the building department for approval demonstrate that the units that are still under construction at Phase 1 will likely contain many of the same FHAA design and construction violations identified in the units currently being rented." (*Id.* at ¶ 22.) The Government highlights "the nature of the alleged barriers–stairs to unit entrances, doorways that are too narrow to accommodate wheelchairs, and kitchens and bathrooms that are configured without adequate clear floor space for a person using a wheelchair." (Gov't's Resp. at 10.) The Court agrees with the Government that these barriers "are such that they are unlikely to change in the construction process absent a redesign of the complex, the submission of new design plans for approval, and the approval of those revised designs by the building department." (*Id.*) In their pleadings as well as oral argument, Defendants submitted their willingness to correct any FHA violations throughout the construction process. But because Defendants have not suggested that they have begun any changes or halted construction to address these issues, the Court must agree that a discriminatory act is "about to occur." 42

8

U.S.C. § 3602(i)(2). Therefore, Plaintiffs' claim is fit for adjudication at this time. *See Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (In determining ripeness, the Court must consider both "the fitness of the issues before the court, as well as the hardship that the parties will experience if the court withholds consideration of the dispute.").

As to the hardship prong of the ripeness inquiry, the Court must consider "the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). As the Government alleges, "Defendants' conduct has already denied housing to persons with disabilities and imposed a hardship to such persons." (Gov'ts Resp. at 14.) On the other hand, Defendants "do not face such a heavy burden "as the costs of future remediation will [only] increase for Defendants." (*Id.* at 15.) The minimal burden on Defendants is confirmed by the legislative history. At the Congressional hearings, it was specifically noted "that it is cheaper to make housing available and accessible to the handicapped when it is being constructed, rather than making modifications later on." 134 Cong. Rec. S10532-04 (Aug. 2, 1988) (statement of Sen. Kennedy). Thus, Congress wanted builders to address accessibility requirements before construction was complete in an effort to thwart costs.

For the reasons stated above, the Court GRANTS the Motion for Reconsideration.[10]

b.  Motion for Leave to Amend

In the alternative, Plaintiffs request leave to amend their Complaint. Plaintiffs' proposed Second Amended Complaint now alleges that construction of all units in the Shockoe Valley apartment complex is complete. The only remaining incomplete structure is a clubhouse, and Plaintiffs do not allege any violations of that structure.

Rule 15 of the Federal Rules of Civil Procedure dictates that a "court should freely give

---

[10] Because the Court grants the Motion for Reconsideration on the basis of a clear error of law, the Court will not address Plaintiffs' contentions regarding manifest injustice. *See Hutchinson*, 994 F.2d at 1081 (emphasis added) (court can grant a Rule 59(e) motion to correct a clear error of law *or* prevent manifest injustice).

[leave to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Specifically, unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile," *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012) (citations omitted), the court should grant leave to amend.

The Fourth Circuit has held that a post-judgment motion to amend is evaluated under the same legal standards: prejudice, bad faith and futility. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). The only difference between a pre- and post-judgment motion to amend is "the district court may not grant the post-judgment motion unless the judgment is vacated pursuant to Rule 59(e) or [Rule] 60(b)." *Id.* (citations omitted). However, to justify vacatur, Plaintiffs "'need not concern themselves with either of those rules' legal standards.'" *Hart*, 495 F. App'x at 315 (quoting *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). Rather, '[t]he court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to [Rule] 15(a).'" *Id.* (quoting *Katyle*, 637 F.3d at 471); *see also United States v. Shabazz*, 509 F. App'x 265, 266–67 (4th Cir. 2013); *Magers v. Chesapeake Appalachia, LLC*, No. 5:12CV49, 2013 WL 6385942, at * (W.D. W. Va. Dec. 6, 2013) ("[T]he inquiry regarding whether or not to vacate the judgment in order to allow a post-judgment motion for leave to amend is not that of either Rule 59(e) or 60. Rather, the standard to be employed is simply that of Rule 15."). If leave is appropriate, then the original judgment should be vacated. *See Katyle*, 637 F.3d at 470–71.

As to the prejudice prong, "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427. "Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend." *Id.* Here, Plaintiffs submit that "discovery has barely begun (indeed, the only discovery that has taken place is the exchange of initial disclosures), no novel claims are being pled, and no discovery would need to be duplicated." (Reply Mem. at 7) (citing *Laber*, 438 F.3d at 428; *Holbert v. OMG, LLC*, No. 1:12CV159, 2013 WL 5838673, at *6–7 (N.D. W. Va. Oct. 30, 2013)). For those

reasons, Defendants will not be prejudiced. Secondly, Plaintiffs have not exhibited bad faith in filing their motion for leave to amend. Finally, "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards[.]" *Katyle*, 637 F.3d 462, 471 (4th Cir. 2011). Plaintiffs' proposed Second Amended Complaint now alleges that all units have been constructed, and "all of the units in the covered apartment complex are either being rented to members of the public or are available to the public to rent immediately." (Second Am. Compl., ECF No. 64-1 at ¶ 29.) This amendment is not futile, but instead provides further factual development since the filing of Plaintiffs' first Complaint, and further confirms that the Plaintiffs' claims are ripe for adjudication.

For those reasons, and because "justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiffs' Motion for Leave to Amend is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, the Motion is GRANTED. Accordingly, this Court's Order and Memorandum Opinion dated April 10, 2015 (ECF Nos. 60, 61) are VACATED. Plaintiffs are directed to file their Second Amended Complaint (ECF No. 64-1).

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___2nd___ day of June 2015.