EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NATIONAL FAIR HOUSING ALLIANCE, INC., *et al.*,

                      Plaintiffs,

v.

HUNT INVESTMENTS, LLC, *et al.*,

                      Defendants.

Civil Action No. 3:14-CV-716

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Dismiss, filed by Defendants Hunt Investments, L.L.C., Cedar Street Genesis, LLC and Genesis Homes Manager, LLC ("Hunt Motion") (ECF No. 79); a Motion to Dismiss, filed by MGT Construction Management, Inc. ("MGT Motion") (ECF No. 81); and Defendant Walter Parks, Architect, PLLC Motion to Dismiss Plaintiffs' Second Amended Complaint ("Parks Motion") (ECF No. 83). The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, each of the above-listed Motions is hereby DENIED.

### I. BACKGROUND

#### a. *Factual Background*[1]

This is a civil rights action brought by Plaintiffs NFHA[2] and HOME[3] against the developers, builders, designers, and owners of the multifamily apartment complex "Shockoe

---

[1] The factual background is gathered from Plaintiffs' Second Amended Complaint (ECF No. 76).
[2] NFHA is a national, nonprofit, public service organization whose mission includes advocating for the rights of people with disabilities to accessible housing. (Second Am. Compl. ¶ 12.)
[3] HOME is a nonprofit corporation who works to ensure equal access to housing for all persons through counseling, education and advocacy. (Second Am. Compl. ¶ 13.)

Valley View Apartments" (also known as "Cedar Street Apartments")[4] located in Richmond, Virginia, arising from violations of the accessibility requirements of the Fair Housing Act, Title VII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601-3619.[5] Specifically, the Defendants in this case are: Hunt Investments, L.L.C. ("Hunt"), Cedar Street Genesis, LLC ("Cedar Street"), Genesis Homes Manager, LLC ("Genesis Homes")–all of whom are allegedly responsible for the design and/or construction of the project; Walter Parks, Architect, PLLC ("Parks")–who is the architect responsible for the design of the project; and MGT Construction Management, Inc. ("MGT")– who is the general contractor on the project.

In June 2014, Plaintiffs allege that they became aware that the multifamily housing complex designed and/or constructed by Defendants did not include the required elements of accessible and adaptable design. Plaintiffs therefore sent "testers"[6] to Shockoe in June 2014. The testers were shown several available units in the covered apartment complex that were available for immediate rental and move-in. In addition, they observed that several units were already rented and occupied. Plaintiffs' testers identified multiple FHAA design and construction violations in the units they saw and in the common areas.[7]

In September 2014, Plaintiffs sent another tester to Shockoe, who was shown several available units in the covered apartment complex that were available for immediate rental and

---

[4] The covered apartment complex consists of 151 dwelling units, arranged in the shape of an L. The building has an elevator to access the second, third, and fourth floors, but each ground floor unit must be accessed through its own individual entrance from out the outside.

[5] The FHAA mandates that every multifamily apartment building containing four or more units and built for first occupancy after March 13, 1991 be subject to certain design and construction requirements. All ground floor units must comply with the following requirements, as must all units in a building served by an elevator: public and common use areas that are readily accessible to, and usable by, people with disabilities; doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs; an accessible route into and through the dwelling; light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; reinforcements in bathroom walls that allow for the later installation of grab bars; and usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space. *See* 42 U.S.C. § 3604(f)(3)(C).

[6] "Testers are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence" of discriminatory housing practices. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

[7] *See* Second Am. Compl. ¶¶ 35–39.

move-in. This tester also observed that several units in the covered apartment complex were already rented and occupied. She identified multiple FHAA design and construction violations in the units she saw and in the common areas.

Defendants' agent attempted to show the tester the model unit, but the tester, who uses a motorized wheelchair, could not enter the model unit because there were steps leading up to the only entrance. The tester observed that several of the units on the ground floor of the covered apartment complex, including units that were occupied, were similarly inaccessible to individuals with disabilities because the only entrance to the unit required an individual to go up steps.

Defendants submitted blueprints for the covered apartment complex to the City of Richmond Building Department in order to obtain building permits. These blueprints allegedly demonstrate that the FHAA design and construction violations identified by the testers in the units they saw are extremely likely to be present in all of the units in the covered apartment complex.

On November 25, 2014, an accessibility consultant hired by Defendants conducted an accessibility inspection at the covered apartment complex. The consultant confirmed that the dwelling units contained violations of the Fair Housing Act Accessibility Guidelines ("FHAAG")[8], identified by Plaintiffs, including a failure to provide accessible visitor parking, exterior doors to balconies with excessively high thresholds, and insufficient centered clear floor space at the range in the kitchen. The consultant also found additional violations of the FHAAG, including a failure to provide appropriate signage, excessive slopes in resident accessible parking spaces, excessive slopes throughout the property, an excessively high drop box for tenants to submit rent checks, and a failure to provide an accessible route to the community garbage dumpster.

---

[8] The FHAAG was published by the United States Department of Housing and Urban Development ("HUD") on March 6, 1991. The guidelines incorporate the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for physically handicapped people. (Second Am. Compl. ¶ 21.)

As of May 8, 2015, all of the units in the covered apartment complex are either being rented to members of the public or are available to the public to rent immediately. The City of Richmond has issued temporary and partial certificates of occupancy[9] permitting residence throughout the covered apartment complex. The only portions of the building that are still under construction are the public areas associated with the clubhouse, a structure that is entirely separate from the building containing the 151 dwelling units and is not included in the claims presented here. The "certificate of occupancy" for the entire building cannot and will not be granted until the public areas associated with the clubhouse are complete.

### b. *Procedural Background*

Plaintiffs filed their Complaint in this Court on October 21, 2014, requesting declaratory and injunctive relief as well as damages and attorneys' fees. Defendants subsequently filed Motions to Dismiss. (*See* ECF No. 6, 9, 12). Those Motions to Dismiss were denied as moot after Plaintiffs filed their Amended Complaint. (*See* ECF No. 43.) Defendants subsequently filed motions to dismiss the Amended Complaint on December 10, 2014, (ECF Nos. 30, 32, 34), pursuant to Federal Rule of Civil Procedure 12(b)(1). After oral argument on April 7, 2015, the Court granted each of the Motions to Dismiss, finding that the claims were not ripe for adjudication. (*See* ECF Nos. 60, 61.) Plaintiffs then filed a Motion for Reconsideration on May 8, 2015. (ECF No. 63.) The Court granted the Motion for reconsideration on June 2, 2015, (ECF Nos. 74, 75) and accordingly vacated its previous Order granting Defendants' Motions to Dismiss.

On June 2, 2015, Plaintiffs filed their Second Amended Complaint. (ECF No. 76).

---

[9] Under the Construction Code applicable in the City of Richmond, there is no "final" certificate of occupancy. Rather, there is a "certificate of occupancy" that
> [i]ndicat[es] completion of the work for which a permit was issued shall be obtained prior to the occupancy of any building or structure . . . . The certificate shall be issued after completion of the final inspection and when the building or structure is in compliance with this code and any pertinent laws or ordinances . . .

2012 Va. Constr. Code § 116.1 (effective July 14, 2014). A "temporary certificate of occupancy," on the other hand, "may be issued before the completion of the work covered by a permit, provided that such portion or portions of a building or structure may be occupied safely proper to full completion of the building or structure without endangering life or public safety." *Id.*

Defendants then filed the present motions to dismiss the Second Amended Complaint pursuant to Rule 12(b)(1).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action. The Court must dismiss the action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Under Rule 12(b)(1), the plaintiff bears the burden of proving that jurisdiction exists in federal court. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The district court must then weigh the evidence to determine whether jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In its determination, a court should grant a Rule 12(b)(1) motion to dismiss if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

## III. DISCUSSION

As they argued in their original motions to dismiss, Defendants again assert that Plaintiffs' claims are not ripe for adjudication because construction of the covered apartment complex is not yet complete. They continue to argue that until the complex is in its final form, any claim that it will not comply with the FHA necessarily depends upon future uncertainties. (*See* MGT Mem. in Supp. of Mot. at 4.) Defendant Parks expressly recognizes that the Court has previously addressed and resolved this identical issue. (Parks Mot. at 1 n.1.) As this Court held in its Order granting Plaintiffs' Motion for Reconsideration, the Court again finds that Plaintiffs' claims are ripe for adjudication.

"The 'ripeness' requirement originates in the 'case or controversy' constraint of Article III, and presents a 'threshold question [] of justiciability." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (quoting *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 195 (4th Cir. 2013)).

The doctrine is intended to prevent courts "from becoming entangled in 'abstract disagreements'" by requiring "courts to avoid taking premature judicial action." *Id.* at 270. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). In determining ripeness, the Court must consider both "the fitness of the issues before the court, as well as the hardship that the parties will experience if the court withholds consideration of the dispute." *Scoggins*, 718 F.3d at 270 (citations omitted).

In the present motions, Defendants attempt to argue that Plaintiffs' claims are unfit for judicial decision because construction of the Cedar Street Apartments it not yet complete. Relying on *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008), Defendants claim that in an FHA design and construct case, claims do not become ripe until construction is complete and the final certificate of occupancy is issued. However, this Court previously rejected this exact argument in its memorandum opinion granting Plaintiffs' motion for reconsideration:

> *Garcia* found that "[t]he statute of limitations is . . . triggered at the conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued." *Garcia*, 526 F.3d at 461. The Court further held that the "failure to design and construct" is "a discrete instance of discrimination that *terminates* at the conclusion of the design-and-construction phase." *Id.* at 462 (emphasis added). Thus, as Plaintiffs contend, *Garcia* does not discuss when the discriminatory act in a design-and-construct claim can *first* be challenged, but rather only discusses when such claims terminate for purposes of the statute of limitations.

(Mem. Op., June 2, 2015, ECF No. 74, at 6.)

Furthermore, the plain language of the statute as well as the Housing and Urban Development ("HUD") regulations confirms that Plaintiffs' claims are in fact ripe. *See Moseke v. Miller and Smith, Inc.*, 202 F. Supp. 2d 492, 502 (E.D. Va. 2002) (citations omitted) ("The initial step in statutory construction is to consider the plain meaning of the statutory terms themselves."). A "discriminatory housing practice" under the FHAA "means an act that is unlawful under section 3604 . . . of this title." 42 U.S.C. § 3602(f). Section 3604 of the FHAA makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny,

a dwelling to any buyer or renter because of a handicap. 42 U.S.C. § 3604(f)(1). Specifically, in connection with "covered multifamily dwellings," discrimination includes

> . . . a failure to design and construct those dwellings in such a manner that—
> (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> (iii) all premises within such dwellings contain the following features of adaptive design:
> (I) an accessible route into and through the dwelling;
> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
> (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C)(i)–(iii).

A covered "multifamily dwelling" means "buildings consisting of 4 or more units if such buildings have one or more elevators; and ground floor units in other buildings consisting of 4 or more units." 42 U.S.C. § 3604(f)(7)(A)–(B); 24 C.F.R. § 100.201 (emphasis added) (defining "covered multifamily dwellings as "buildings consisting of 4 or more *dwelling units* if such buildings have one or more elevators; and ground floor *dwelling units* in other buildings consisting of 4 or more dwelling units").[10] Moreover, dwelling is defined as "any building, structure, or *portion thereof* which is occupied as, or designed or intended for occupancy as, a residence by one or more families . . . ." 42 U.S.C. § 3602(b) (emphasis added). The HUD regulations also specifically define a "dwelling unit" as a "single unit of residence for a family or one or more persons . . . *includ[ing] an apartment unit* within an apartment building." 24 C.F.R. § 100.201 (emphasis added).

Here, Plaintiffs' Second Amended Complaint alleges that "[t]he dwelling units are fully constructed and have been and are currently being rented to the public." (Second Am. Compl. ¶¶

---

[10] The Shockoe Valley Apartments are "multifamily dwellings" as that term is defined in the FHA. (*See* Second Am. Compl. ¶ 3.)

5, 29.) Further, "[t]he City of Richmond has issued temporary and partial certificates of occupancy permitting residence throughout the covered apartment complex." (*Id.* at ¶ 29.) Plaintiffs state that a "final" certificate of occupancy will not be issued until the clubhouse is complete constructed; however, Plaintiffs' claims are not related to that structure. (*Id.* at ¶¶ 32, 33.) Despite already being occupied by renters, these dwelling units contain multiple FHAA violations. (*See id.* at ¶¶ 35–39.) Accepting these allegations as true, Plaintiffs' claims are fit for adjudication. Defendants have failed to "design and construct" this covered multifamily dwelling in compliance with 42 U.S.C. § 3604(f)(3)(C).

As to the hardship prong of the ripeness inquiry, the Court must consider "the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). First, Defendants' conduct has already imposed a hardship to persons with disabilities. For example, Plaintiffs' tester who uses a motorized wheelchair was unable to "enter the model unit because there were steps leading up to the only entrance." (Second. Am. Compl. ¶ 25.) Because these apartment units "are either being rented to members of the public or are available to the public to rent immediately," (*id.* at ¶ 29), there is an immediate threat.

Secondly, the burden on Defendants to correct these FHAA violations is minimal, although they attempt to argue that it would be "patently unfair to impose FHA liability on a contractor for a partially-complete construction project, as plans routinely change during the course of a project," (MGT Mem. in Supp. of Mot. at 8), and it would subject "developers to limitless lawsuits," (Parks Mem. in Supp. of Mot. at 7). Defendants' arguments are contradicted by the legislative history, which illustrates that the costs of future remediation will only increase for Defendants. At the Congressional hearings, it was specifically noted "that it is cheaper to make housing available and accessible to the handicapped when it is being constructed, rather than making modifications later on." 134 Cong. Rec. S10532-04 (Aug. 2, 1988) (statement of

Sen. Kennedy). Thus, Congress wanted builders to address accessibility requirements before construction was complete in an effort to thwart costs. Following Congress' intent, the burden on Defendants at this stage of construction is minimal compared to what it could be at completion of the apartment complex.

## IV. CONCLUSION

For the foregoing reasons, the Hunt Motion, MGT Motion, and Parks Motion are hereby DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __14th__ day of July 2015.